**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

| | | |
|---|---|---|
| **KOLESZAR FARM LLC,** | : | CHAPTER 11 |
| | : | |
| Debtor. | : | Bankruptcy No. 21-11653-amc |

**DEBTOR'S RESPONSE TO MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2014-2, FOR *NUNC PRO TUNC IN REM* RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY (AS APPLICABLE) PURSUANT TO 11 U.S.C. §§362(d) AND 1301(c) AND TO DISMISS THE BANKRUPTCY PURSUANT TO 11 U.S.C. §1112(b)**

The Debtor, Koleszar Farm LLC, by and through counsel, Regional Bankruptcy Center of Southeastern PA, P.C., hereby responds to the Motion of Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2 (hereinafter referred to as "Wilmington Trust") for *nunc pro tunc in rem* Relief from the Automatic Stay and co-debtor stay (as applicable) pursuant to 11 U.S.C. §§362(d) and 1301(c) and to Dismiss the Bankruptcy pursuant to 11 U.S.C. §1112(b) with respect to the Debtor's property located at 348 Pineville Road, Newtown, PA 18940 (hereinafter the "Property"), and in support thereof respectfully represent as follows:

1. It is admitted that Movant filed the instant Motion, although after reasonable investigation, Debtor is without information sufficient to form a belief as to whether or not Movant is the proper party to file such a Motion, and therefore denies the averment to that extent. Strict proof of Movant's standing as a party in interest is demanded at the hearing in this matter.

2. Denied as stated. Debtor is the record owner of the Property.

3. Denied as stated. The averment constitutes a conclusion of law to which no response is required. Strict proof of the proper chain of title for the interest claimed in the Property by the Movant is demanded at the hearing in this matter.

4. Denied as stated. The averment constitutes a conclusion of law to which no response is required.

5. Denied. The Debtor is the debtor-in-possession; no Trustee has been appointed by the Court.

6. Denied as stated. The Debtor filed the above-captioned Chapter 11 case on June 11, 2021.

7. Admitted in part, denied in part. It is admitted that the Debtor filed the above-captioned Chapter 11 case at about 11:10 a.m. on June 11, 2021, and that a Sheriff's Sale was scheduled at 12:00 noon with respect to the Debtor's Property. Movant's characterization of the Chapter 11 filing is denied. By way of further response, just the day before the June 11, 2021 Sheriff's Sale, counsel for the Movant had proposed a consent order to postpone the Sheriff's Sale, after the Antunes sent and Movant's counsel accepted a $30,000.00 cashier's check earlier that week, while the parties concluded settlement discussions to resolve the terms of a permanent loan modification agreement. Although Movant's counsel had indicated that Movant's consent for the postponement had not yet been obtained, it appeared to be pro forma and Movant did not notify Movant's counsel until nearly 4:30 p.m. on June 10, 2021, that Movant would not consent to the

postponement, disrupting the parties' negotiations and calling into question whether Fay Servicing, on behalf of the Movant, was conducting negotiations in good faith.[1]

8. Denied as stated. It is admitted that a Petition had been filed in the Bucks County Court of Common Pleas, but the characterization of the Petition is denied. See previous response in paragraph 7 above.

9. Denied as stated. It is admitted that the Bucks County Court of Common Pleas Judge denied a postponement of the June 11, 2021 Sheriff's Sale, but that was not the relief sought in the Petition and it was clear that the Judge had not read the Petition, nor did the Judge follow his own previous Order entered on April 9, 2021 in the foreclosure case.

10. Denied as stated, due to the inclusion of the word "However", which is a non-sequitur. As set forth in paragraph 7 above, it is admitted that the Debtor filed the above-captioned Chapter 11 case at about 11:10 a.m. on June 11, 2021.

11. Denied as stated. Debtor notified Movant's counsel of the bankruptcy filing well before the Sheriff's Sale took place with respect to the Property. By way of further response, Debtor notified the Sheriff of Bucks County of the bankruptcy filing before 12:00 noon on June 11, 2021, but the Sheriff's deputy at the counter incorrectly indicated that the Sale would only be stayed if Movant's counsel authorized such a stay. Moreover, both Movant's counsel and the Sheriff's deputy received written notice of the filing well

---

[1] Counsel for Fay Servicing appeared to be conducting negotiations good faith, but it seems that the client representative at Fay Servicing may have been engaged in a course of conduct to deliberately delay the response to counsel, in an attempt to gain unfair advantage and to use surprise to have the Property sold.

before any sale of the Property took place, and both decided to proceed with the sale in willful violation of the automatic stay with knowledge of the filing.

12. Denied as stated. To the extent that Movant and the Sheriff's Office willfully ignored the Debtor's bankruptcy filing and the automatic stay and recorded a transfer of the Property to Movant, such transfer not only violated the automatic stay but was void.

13. Denied. See Affirmative Defenses below and the Debtor's Adversary Proceeding being filed at or about the same time as this Response.

14. Denied. To the contrary, the Antunes made two lump sum payments totaling $60,000.00 plus 13 consecutive payments of $9,722.34 – a total of $186,390.42 – to Fay Servicing under the terms of a trial period plan offered to the Antunes, and the Debtor has made the initial post-petition payment to Fay Servicing until the proper terms of a permanent loan modification agreement can be determined in accordance with the parties' agreement and the Antunes' and the Debtor's reliance upon the offer for a permanent loan modification upon successful completion of the trial period plan.

15. Admitted in part, denied in part. The Debtor was established with the Commonwealth of Pennsylvania Secretary of State in April, 2021, but the exact date the LLC became extant is a matter of state law to be determined as a matter of law to the extent the exact date of establishment is relevant to a determination of this Motion.

16. Denied as stated. By way of further response, there is no such entity as a "main member". It is admitted that Judith M. Antunes played a role in filing the required forms with the Secretary of State to establish the Debtor.

17. It is admitted that a deed from the Antunes to the Debtor was executed and recorded with the Bucks County Recorder of Deeds on or about April 8, 2021.

18. Denied as stated. It is admitted that the Antunes quickly assembled an Emergency Petition using an earlier drafted Petition as a template when they suddenly learned from Movant's counsel at 4:32 p.m. the day before the sale that Movant had not consented to the postponement that had been under discussion, and that in their haste to present a Petition seeking various relief including, *inter alia*, a stay of the June 11, 2021 Sheriff's Sale, they inadvertently left in a paragraph from an earlier Petition indicating that they were the owners of the Property, when it had actually been transferred to the Debtor about two months previously.

19. The averment constitutes a conclusion of law to which no response is required.

20. Admitted for the reason set forth in paragraph 18 above.

21. Denied as stated. The Petition filed on April 9, 2021 was drafted prior to the transfer of the Property (and the Debtor was not sure exactly when the deed transfer would become effective with the Bucks County Recorder of Deeds), but Bucks County Court of Common Pleas procedures now only permit hearings related to Sheriff's Sales on the date of the Sale.

22. Denied. There is no doubt as to the ownership of the Property, which is a matter of public record and available for anyone to access online.

23. Denied. By way of further response, the averment constitutes a conclusion of law to which no response is required, but the Debtor denies both the factual assertions and implications of the averment.

24. Denied. By way of further response, the averment constitutes a conclusion of law to which no response is required, but the Debtor denies both the factual assertions and implications of the averment.

25. Denied. By way of further response, the averment constitutes a conclusion of law to which no response is required, but the Debtor denies both the factual assertions and implications of the averment.

26. Denied as stated. The averment is incomplete.

27. Admitted in part, denied in part. It is admitted that the Court issued an Order on June 14, 2021. Movant's characterization of the content of the Order is denied. The Order is a document that speaks for itself.

28. Denied as stated. The June 14, 2021 Order is a document that speaks for itself.

29. Denied as stated. It is admitted that the Debtor did not file all required documents with its Voluntary Petition, but the Debtor sought an extension to file the required documents.

30. Denied as stated. It is admitted that the Debtor filed a request for an extension to file the required documents.

31. Denied as stated. The averment is not stated in a manner that permits a specific response, nor does it appear that the averment is relevant to the substance of the Motion.

32. Denied as stated. The averment is not stated in a manner that permits a specific response, nor does it appear that the averment is relevant to the substance of the Motion. By way of further response, the averment calls for speculation.

33. Admitted in part, denied in part. It is admitted that at the time Movant filed this Motion, Schedules had not been filed. The remaining allegations are not stated in a manner that permits a specific response, nor does it appear that the averment is relevant to the substance of the Motion. By way of further response, the averment calls for speculation.

34. Denied as stated. The averment appears to have been misdrafted in that it is not clear what Movant meant by "there is may not any equity".

35. Denied. Strict proof thereof is demanded at the hearing in this matter to the extent it is relevant to the substance of the Motion.

36. Denied. To date, it does not appear that any claims have been filed in the case.

37. Denied. By way of further response, the averment constitutes a conclusion of law to which no response is required, but the Debtor denies any factual assertions included in the Movant's conclusion of law.

38. Denied, especially in light of the responses in paragraphs 7 and 14 above, Affirmative Defenses below, and the Adversary Proceeding to be filed in this case.

39. Denied as stated. By way of further response, see the responses in paragraphs 7 and 14 above. The Antunes entered into a trial period plan offered by Fay Servicing, mortgage servicer acting on behalf of Movant, timely completed all payments, were negotiating the terms of a permanent loan modification agreement in good faith, and believed that Fay

Servicing would also negotiate the terms of the permanent loan modification agreement in good faith after accepting lump sum and trial period plan payments from them over a period of about a year and a half.

40. Denied as stated for the reasons set forth above, especially in the response in paragraph 9 above.

41. Denied. The averment constitutes a conclusion of law to which no response is required. By way of further response, Movant's mischaracterization of this case is a smokescreen to attempt to obscure Movant's willful violation of the automatic stay by collaborating with personnel in the Office of the Bucks County Sheriff to deem the Property sold despite clear notice of the filing of this case, and without first seeking any relief from the automatic stay from this Court.

42. Denied. The averment constitutes a conclusion of law to which no response is required.

43. Denied. The averment constitutes a conclusion of law to which no response is required.

44. The averment constitutes a conclusion of law to which no response is required. By way of further response, the discretion afforded the Bankruptcy Court to annul the stay after the fact should not be exercised in circumstances under which a creditor engaged in a deliberate and willful violation of the automatic stay rather than present its case to the Court for granting relief from the stay.

45. Denied. The averment constitutes a conclusion of law to which no response is required.

46. Denied. The averment constitutes a conclusion of law to which no response is required.

47. Denied. The averment constitutes a conclusion of law to which no response is required.

48. Denied.  The averment constitutes a conclusion of law to which no response is required.

49. Denied.  The averment constitutes a conclusion of law to which no response is required.

50. Denied.  The averment constitutes a conclusion of law to which no response is required.

51. Denied.  The averment constitutes a conclusion of law to which no response is required.

52. Denied.  The averment constitutes a conclusion of law to which no response is required. By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law.

53. Denied.  The averment constitutes a conclusion of law to which no response is required. By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law.

54. Admitted.

55. Admitted in part, denied in part.  It is admitted that the mortgage was in default when the Complaint was filed, but the amount due at the time of filing is disputed, and strict proof thereof is demanded at the hearing in this matter.  By way of further response, the Antunes had submitted several applications for a loan modification and Movant, through its servicer, had failed to process the applications in good faith or in accordance with the Consumer Financial Protection Bureau's mortgage servicing regulations.  Moreover, any prior default is of little relevance now after the Antunes, and now the Debtor have made nearly $200,000 in payments to Fay Servicing in good faith in conjunction with the trial period plan offered and negotiations for a permanent loan modification agreement.

56. Denied.  This is essentially a repeat of paragraph 37 of the Motion, and Debtor incorporates its response to paragraph 37 above.

57. Denied.  The averment constitutes a conclusion of law to which no response is required. By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law, especially the unwarranted assertion that the Debtor and/or the Antunes engaged in "unjust and inequitable behaviors prior to the bankruptcy filing".  To the contrary, it was the Movant and its servicer that did so for the reasons set forth in the responses above and in the Affirmative defenses below.

58. Denied.  This is essentially a repeat of paragraph 41 of the Motion, and Debtor incorporates its response to paragraph 41 above.  By way of further response, Movant has mischaracterized the Petition filed by the Antunes.

59. Denied.  This is essentially a repeat of a portion of paragraph 42 of the Motion, and Debtor incorporates its response to paragraph 42 above.  By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law.

60. Denied.  This is essentially a repeat of a portion of paragraph 43 of the Motion, and Debtor incorporates its response to paragraph 43 above.  By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law.

61. Denied.  The averment constitutes a conclusion of law to which no response is required. By way of further response, the Debtor denies any factual assertions included in the Movant's conclusion of law.

## AFFIRMATIVE DEFENSES

62. The responses and averments set forth in paragraphs 1 through 61 above are realleged and incorporated herein as if set forth in full.

63. Upon information and belief, there is no recent appraisal of the Property. Movant has overstated the amount due under the loan in the Motion. Therefore, there may be equity in the Property, or the Property may be subject to an action pursuant to 11 U.S.C. §506. Strict proof of a lack of equity is demanded at the hearing in this matter.

64. The Antunes transferred the Property to the Debtor not only in anticipation of avoiding a possible Sheriff's Sale, but also to establish revenue generating farming activities on the Property to enhance income, and thus to be able to afford payments under a permanent loan modification, and in conjunction with estate planning.

65. The Property is necessary for an effective reorganization by the Debtor in order to accomplish those goals.

66. As set forth in the responses in paragraphs 11, 12 and 41 above, with direct advance knowledge that this Chapter 11 case had been filed, Movant collaborated with personnel in the Office of the Bucks County Sheriff to deem the Property sold despite clear notice of the filing of this case, and without first seeking any relief from the automatic stay from this Court.

67. Moreover, upon information and belief, Fay Servicing deliberately delayed notifying its counsel that it would refuse to enter into the consent order proposed by Movant's counsel until late in the day before the June 11, 2021 Sheriff's Sale in order to gain unfair

advantage and the element of surprise in order to sell the Property, while appearing to be negotiating the terms of a permanent loan modification agreement in good faith.

68. The actions of Fay Servicing, as agent of the Movant, set forth in the above paragraphs of the Debtor's response, especially paragraphs 7, 11, 12, 14, 41 and 44, and paragraphs 66 and 67 of the Debtor's Affirmative Defenses, clearly demonstrate Movant's unclean hands in seeking annulment of the automatic stay or dismissal of this case, and are a bar to the relief sought.  No Court has annulled the automatic stay *nunc pro tunc* in such circumstances.

69. Movant, through its servicer, Fay Servicing, offers loan modifications and other assistance to eligible borrowers in financial distress.  As indicated above, the Antunes applied on multiple occasions for a loan modification with Movant's purported agent, Fay Servicing.

70. Prior to transfer of the Property to the Debtor, in May, 2020, Fay Servicing finally offered, and the Antunes accepted, a six month trial period plan (June through November, 2020) upon which the Antunes fully and timely performed, after which they were entitled to a permanent loan modification.  In fact, the Antunes continued to make monthly payments at the trial period plan rate every month after the last official trial period plan payment made for November, 2020.

71. In late October, 2020, Fay Servicing presented a proposed permanent loan modification agreement that appeared to capitalize overcharges and to include excessive interest, so on multiple occasions the Antunes requested the detailed calculations by which Fay

Servicing determined the new principal balance amount. Other than a brief chart with conclusory figures showing no calculations, Fay Servicing did not respond to the request.

72. Beginning in February, 2021, Fay Servicing returned several mortgage payments.

73. Following the Order entered on April 9, 2021 by the Bucks County Court of Common Pleas (copy attached hereto and incorporated herein, marked as Exhibit "A"), although Movant did not strictly comply by meeting, the parties engaged in discussions and negotiations from late April, 2021, through June 10, 2021, regarding the terms of the permanent loan modification agreement. It appeared that the discussions were initially taking place in good faith between counsel.

74. In those discussions, Movant demanded payment of the $30,000.00 intended to represent the three payments returned by the Movant and indicated that the terms of the loan modification would have to be recalculated. As indicated above, a $30,000.00 cashier's check was tendered to Movant's counsel on June 8, 2021, in anticipation of finalizing the terms of the permanent loan modification. Some terms were the subject of ongoing negotiation, starting with a detailed proposal made to Fay Servicing on May 7, 2021, but Fay Servicing repeatedly indicated that some of the figures in the permanent loan modification agreement offered in late October, 2020 would have to be updated before a revised permanent loan modification agreement could be signed.

75. As indicated above, rather than follow through with the consent order after the $30,000.00 cashier's check was sent and received as requested, allowing adequate time to conclude negotiations and revise the permanent loan modification agreement, Fay Servicing suddenly switched gears at 4:32 p.m. on June 10, 2021, and indicated that it

would no longer agree to postpone the June 11, 2021 Sheriff's Sale to allow for sufficient time to conclude and implement a permanent loan modification agreement.

76. As set forth in the responses in paragraphs 7, 14 and 55 above, and based upon the facts and circumstances surrounding the trial period plan and discussions and negotiations pursuant to the April 9, 2021 Bucks County Court of Common Pleas Order (Exhibit "A"), the actions of Fay Servicing, as agent of the Movant, with respect to the loan modification also clearly demonstrate Movant's unclean hands in seeking annulment of the automatic stay or dismissal of this case, and are a bar to the relief sought. No Court has annulled the automatic stay *nunc pro tunc* in such circumstances.

77. The Antunes' payments and the Debtor's anticipated post-petition payments, whether under the original loan terms or under any loan modification ultimately concluded between the parties or enforced by the Court also would provide adequate protection to Movant or the true holder of the mortgage.

78. In accordance with Consumer Financial Protection Bureau ("CFPB") regulations including, but not limited to, 12 C.F.R. §1024.41, Fay Servicing offered a trial period plan leading to a permanent loan modification on or about May 15, 2020, that was accepted by the Antunes and upon which the Antunes fully and timely performed.

79. Movant should be barred from seeking relief from the automatic stay until it takes action with respect to the permanent loan modification agreement in accordance with CFPB regulations.

80. Movant has failed to comply with 12 C.F.R. §1024.41 in processing the permanent loan modification agreement, in that it/they failed to:

    a. "Evaluate the borrower for all loss mitigation options available to the borrower;" 12 C.F.R. §1024.41(c)(1)(i).

    b. "Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. §1024.41(c)(1)(ii).

    c. "[I]nclude in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program … [and] that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal." 12 C.F.R. §1024.41(c)(1)(ii).

    d. Offer a properly calculated permanent loan modification agreement after the Antunes tendered nearly $200,000 in good faith performance under the terms of the trial period plan offered by Fay Servicing and accepted.

81. In order for Movant/Fay Servicing to deny the entitlement to a permanent loan modification agreement, Movant/Fay Servicing must comply with 12 C.F.R. §1024.41(d) by "stat[ing] in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria".

82. It is appropriate for the Automatic Stay to remain in place until a final determination is made with regard to the loan modification application. *See In re Roderick*, 425 B.R. 556 (Bankr. E.D. Cal. 2010) (where the Court granted the debtors' motion pursuant to Bankr. R. Civ. Pro 4004(c)(2) to defer discharge and thereby the expiration of the Automatic Stay due to ongoing loan modification negotiations and thus reaffirmation deliberations by the debtors).

83. For the reasons set forth in response to the Wilmington Trust Motion and in the Affirmative Defenses set forth herein, it is denied that any cause or grounds for annulling the automatic stay *nunc pro tunc*, terminating the automatic stay, or dismissing the case exists.

**WHEREFORE**, the Debtor respectfully requests, after a hearing is conducted in this matter,[2] that the Court enter an Order denying the Motion of Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2 for *nunc pro tunc in rem* Relief from the Automatic Stay and co-debtor stay (as applicable) pursuant to 11 U.S.C. §§362(d) and 1301(c) and to Dismiss the Bankruptcy pursuant to 11 U.S.C. §1112(b).

Respectfully submitted,
REGIONAL BANKRUPTCY CENTER OF
SOUTHEASTERN PA, P.C., by:

Roger V. Ashodian
Attorney ID #42586
101 West Chester Pike, Suite 1A
Havertown, PA  19083
(610) 446-6800

Attorney for Debtor

---

[2] Because there a numerous factual allegations made by both parties, and no apparent stipulation with respect to the facts, it is likely that an evidentiary hearing must be conducted. Protocols for testimony by the parties' state court counsel may also need to be established.